Karl Anthony GUYDON *v.* STATE of Arkansas

CA CR 99-1042                                34 S.W.3d 804

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered December 20, 2000

*James P. Clouette*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Karl Anthony Guydon was convicted by a jury of two counts of delivery of a controlled substance (crack cocaine), and was sentenced to twelve years on each count, to be served concurrently. Guydon's sole point on appeal is that the trial court erred in allowing the introduction of the controlled substances because there was a discrepancy in the weights, and the State failed to prove a proper chain of custody. We agree, and reverse and remand for new trial.

On June 4, 1998, Ron Messer, a Little Rock police officer working undercover, went to Guydon's residence and made two separate purchases of what was allegedly crack cocaine for $20 each. Messer testified that he turned the off-white, rock-like substance over to Investigator Scott Leger. Leger testified that when Messer gave the substances to him, he weighed them, placed them in sealed property envelopes, and initialed the envelopes and transported them to the crime lab in Little Rock. He further testified that State's Exhibit 1 weighed three-tenths of a gram and State's Exhibit 2 weighed two-tenths of a gram, that he did not transport the drugs to the crime lab until June 18, and that they were in a personal-property locker until that time. Kathy Shanks, a chemist with the Arkansas State Crime Lab, testified that she did the analysis on the two exhibits, which she described as two hard, off-white, rock-like substances. She identified her initials and laboratory case number and the date and time that she performed the analysis, and testified that Exhibit 1 weighed a total of 0.1828 grams, that Exhibit 2 weighed 0.1183 grams, and that both tested positive for cocaine base and benzocaine.

At that time the State moved to introduce the two exhibits, and Guydon's counsel requested permission to voir dire the witness. During voir dire, Shanks testified in pertinent part that: the exhibits were tested on October 26, 1998; identified two other workers who received the evidence and brought it to her; stated she did not know who placed it in the secured locker, if it was in a sealed condition, or if proper lab protocol was followed and stated only that it was sealed when she received it.

Guydon's counsel then objected to the admission of the exhibits based on the substantial difference in the testimony of Officer Leger and Ms. Shanks regarding the weight of the drugs, and the fact that at least two persons in the chain of custody were not there

to testify. In response the State contended that there was no evidence of tampering and that there had been substantial compliance with the chain of custody. The trial court overruled Guydon's objection and admitted the two exhibits into evidence.

We first address the State's contention that Guydon has failed to preserve this issue for appeal because he failed to make his chain-of-custody objection until the physical evidence was offered into evidence and after the crime lab chemist had testified that the substances were cocaine. Guydon objected immediately after the chemist's testimony revealed the weight discrepancy and the break in the chain of custody. Our Supreme Court has said that such an objection must be made at the time the evidence in question is offered. *See Pryor v. State,* 314 Ark. 212, 861 S.W.2d 544 (1993). Consequently, the issue is preserved and we must address the merits.

The purpose of the chain of custody is to prevent the introduction of evidence which is not authentic. *Gomez v. State,* 305 Ark. 496, 809 S.W.2d 809 (1991). To prove its authenticity, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.* It is not necessary that every possibility of tampering be eliminated; it is only necessary that the trial court, in its discretion, is satisfied that the evidence presented is genuine, and in reasonable probability, has not been tampered with. *Dixon v. State,* 310 Ark. 460, 839 S.W.2d 173 (1992). Any minor discrepancies are for the trial court to weigh and, absent some evidence of tampering, the trial court is accorded discretion, and its ruling in this regard will not be reversed on appeal absent an abuse of discretion. *Holbird v. State,* 301 Ark. 382, 784 S.W.2d 171 (1990).

Here, we cannot say that the difference between 0.3 and 0.1828 grams, or between 0.2 and 0.1183 grams is insignificant or minor, any more than a discrepancy between 30 and 18 grams or between 20 and 11 grams would be considered minor. Moreover, although small quantities of contraband are involved in this case, our criminal statutes pertaining to illegal contraband provide that such small amounts are a basis for imposing years of penitentiary time; surely a reasonably accurate weight determination cannot be said to be simply a "minor" matter.

We find this case analogous to *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997), in which the supreme court held that the trial court abused its discretion by receiving into evidence contraband that was not properly authenticated due to a marked difference in the description provided by an undercover officer and a crime lab chemist. The supreme court held that because there was a significant possibility that the evidence tested was not the same as that purchased by the officer, the State was required to do more to establish the authenticity than to simply trace the route of the envelope containing the substance. Although the discrepancy in *Crisco* involved color and texture, and this case involves only weights, we conclude that the underlying rationale expressed in *Crisco* holds true in this case. Here, there was a marked difference in the two weights testified to by the officer and the chemist, and no attempt made by the State to establish the authenticity of the drug tested other than by tracing the route of the envelope.

■ In sum, there are several factors, not simply the weight discrepancy standing alone, that combine to mandate reversal of this case. First, the supreme court has said that the proof of chain of custody for interchangeable items like drugs or blood needs to be more conclusive. *Id.*; *Lee v. State*, 326 Ark. 229, 931 S.W.2d 433 (1996). Second, the discrepancies in the weights involved in this case are significant enough to raise an inference of at least the possibility of tampering. Third, the discrepancy is unexplained by the State. Fourth, all persons who handled the evidence were not present to testify.

Surely, neither the trial court nor this court should attempt to play chemist, and fill in the missing explanation for the discrepancy in this case, any more than the supreme court did in *Crisco*. Of course, the State is not precluded by this holding from attempting to properly authenticate these exhibits on retrial of this case.

Reversed and remanded.

GRIFFEN, HART, JENNINGS, and NEAL, JJ., agree.

MEADS, CRABTREE, PITTMAN, and BIRD, JJ., dissent.

MARGARET MEADS, Judge, dissenting. I respectfully dissent from the decision reached by the majority in this case. Evidentiary matters regarding the admissibility of evidence are

left to the sound discretion of the trial court, and rulings in this regard will not be reversed absent an abuse of discretion. *Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995). Interchangeable items, such as blood or drugs, require a more conclusive chain of custody. *See Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988). However, while the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with, it is not incumbent upon the State to exclude every possibility of tampering; the State must only prove to the trial court's satisfaction that in all reasonable probability the evidence has not been tampered with. *White v. State*, 330 Ark. 813, 958 S.W.2d 519 (1997).

The majority finds this case analogous to *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997); however, I believe *Crisco* is distinguishable. In *Crisco*, the undercover officer described the substance he seized as "an off-white powder substance," whereas the chemist described it as "a tan, rock-like substance." Because the drug was readily interchangeable, the court concluded there was a significant possibility that the evidence tested was not the evidence seized and held that the trial court abused its discretion by admitting the evidence. Here, the only discrepancy in testimony concerned the weight of the substance, which was negligible. The difference in testimony regarding the weight of Exhibit 1 was only .1172 gram, and the difference regarding Exhibit 2 was a mere .0817 gram. These discrepancies could be the result of more sophisticated scales in a crime lab, as opposed to scales used in a field test. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render evidence inadmissible as a matter of law. *Gardner v. State, supra.*

While a greater discrepancy may require a different conclusion, to my mind, in this case, the difference between the weights of the two exhibits is insubstantial and insignificant. I cannot say that the trial judge abused his discretion in allowing the evidence to be admitted, and I would affirm.

I am authorized to say that Judges CRABTREE, BIRD, and PITTMAN agree.