Karl Anthony GUYDON *v.* STATE of Arkansas

CR 01-037                                    39 S.W.3d 767

Supreme Court of Arkansas
Opinion delivered March 22, 2001

*James P. Clouette*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. On September 3, 1998, a felony information was filed, charging appellant, Karl Guydon, with two counts of delivery of a controlled substance. The information alleged that appellant had delivered cocaine on two occasions

on June 4, 1998. Appellant entered a plea of not guilty on both counts.

On April 19, 1998, a jury trial was held. At trial, Ron Messer, a Little Rock Police Officer, working undercover, testified that he went to appellant's residence and made two separate purchases of what was allegedly crack cocaine for twenty dollars each. Officer Messer testified that he turned the off-white, rock-like substance over to Officer Scott Leger of the North Little Rock Police Department.

Officer Leger testified that when Officer Messer gave the substances to him, he weighed them, placed them in sealed property envelopes, initialed the envelopes, and transported them to the Arkansas State Crime Laboratory. He further testified that State's Exhibit 1 weighed 0.3 of a gram and State's Exhibit 2 weighed 0.2 of a gram.

Kathy Shanks, a forensic chemist from the Arkansas State Crime Laboratory, also testified. She was able to identify State's Exhibits 1 and 2 because they were marked with her initials, laboratory case number, and the date and time that she performed her analysis of the substances. Ms. Shanks testified that her analysis showed that State's Exhibit 1 was a plastic bag containing off-white rock-like substance weighing 0.1828 of a gram, which tested positive for cocaine base and Benzocaine. She further stated that State's Exhibit 2 was a plastic bag containing off-white rock-like substance weighing 0.1183 of a gram, and that it tested positive for cocaine base and Benzocaine.

Following Ms. Shanks identification of State's Exhibits 1 and 2, the State moved to introduce the two exhibits. Before the trial court had admitted the exhibits into evidence, appellant requested a *voir dire* of Ms. Shanks. During *voir dire*, Ms. Shanks testified that Stephanie Gray from the evidence receiving department took both exhibits into custody. Ms. Shanks noted that, when she was ready to perform her analysis on the substances, Lori Schumacher from the evidence receiving department gave her the evidence.

At the conclusion of the *voir dire*, appellant's attorney objected to the admission of the exhibits based on the difference in the testimony of Officer Leger and Ms. Shanks regarding the weight of the drugs and the fact that two employees at the Arkansas State Crime Laboratory, who came into contact with the evidence, were not there to testify. In response, the State contended that there was

no evidence of tampering and that there had been substantial compliance with the chain of custody. The trial court overruled appellant's objection and admitted the two exhibits into evidence.

Appellant was convicted by a jury of two counts of delivery of a controlled substance, and was sentenced to twelve years on each count, to be served concurrently. Appellant appealed his conviction to the court of appeals. On December 20, 2000, the court of appeals reversed and remanded appellant's case, holding that the trial court had abused its discretion when it admitted State's Exhibits 1 and 2 without a proper chain of custody established. *See Guydon v. State*, 72 Ark. App. 285, 34 S.W.3d 804 (2000).

■ On January 8, 2001, the State filed a petition for review of the court of appeals' decision. We granted the State's petition. When we grant review following a decision by the court of appeals, we consider the case as though it had been originally filed with this court. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999). Appellant raises one point for our review, and we·affirm the trial court.

In his only point on appeal, appellant contends that the trial court erred when it admitted State's Exhibits 1 and 2 into evidence. Specifically, appellant argues that because there was a discrepancy in the weight of the exhibits and because the State failed to prove a proper chain of custody, we should conclude that the trial court abused its discretion in admitting the evidence.

■ ■ Before addressing the merits of appellant's issue on appeal, it is necessary for us to discuss a procedural matter raised by the State. On appeal, the State argues that appellant's appeal is procedurally barred because appellant did not raise his chain-of-custody objection until the physical evidence was offered for admission into evidence. The State's argument is based on our holding in *Gonzalez v. State*, 306 Ark. 1, 811 S.W.2d 760 (1991). In *Gonzalez*, we declined to address a challenge to the admission of evidence based on an improper chain of custody. We held that a party has a duty to make a timely and complete objection to the admission of evidence. *Id.* In our cases following *Gonzalez*, we have held that an objection to the admission of evidence based on an allegation of an improper chain of custody needs to be made at the time the evidence in question is offered for admission. A chain-of-custody objection made after the evidence has been admitted is not timely. *See Pryor v. State*, 314 Ark. 212, 861 S.W.2d 544 (1993); *see also Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992). In this case, appellant objected immediately after Ms. Shank's testimony

revealed the weight discrepancy and the break in the chain of custody and before State's Exhibits 1 and 2 were admitted into evidence. Accordingly, the issue was preserved for appellate review.

Turning now to the merits of appellant's case, appellant contends that State's Exhibits 1 and 2 were improperly admitted into evidence because the State failed to establish an unbroken chain of custody. The alleged missing links were the absence of testimonies by Stephanie Gray, the employee at the Arkansas State Crime Laboratory, who received State's Exhibits 1 and 2 into custody from Officer Leger, and Lori Schumacher, an employee at the Arkansas State Crime Laboratory, who removed the evidence from the secured area at the Arkansas State Crime Laboratory and gave it to Ms. Shanks for analysis. Appellant claims that because conflicting evidence was introduced as to the weight of the evidence, a greater burden is placed on the State when establishing its chain of custody. Appellant's argument is without merit.

We have consistently stated that the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with. *Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997). To prove authenticity of evidence the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Gomez v. State*, 305 Ark. 496, 809 S.W.2d 809 (1991). To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Id.* Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.* On review, we will not reverse a ruling on an evidentiary matter regarding the admissibility of evidence absent an abuse of discretion because such matters are left to the sound discretion of the trial court. *See Newman, supra.*

In the present case, we conclude that the State established within a reasonable probability that the evidence had not been tampered with. At trial, Officer Messer positively identified State's Exhibits 1 and 2 as the crack cocaine, which he purchased from appellant. He further testified that the evidence looked the same as it did when appellant first gave it to him. Officer Messer explained

that after appellant sold him the drugs, he turned them over to Officer Leger.

Next, Officer Leger positively identified State's Exhibits 1 and 2 as the evidence that Officer Messer gave him during an undercover investigation in June of 1998. Officer Leger testified that when he took possession of the evidence, he (1) weighed the evidence; (2) put the evidence in a sealed packet; (3) put the packet in a property envelope; (4) completed the necessary paperwork; (5) sealed the envelope with evidence tape; (6) initialed the evidence tape; and (7) transported the evidence to the Arkansas State Crime Laboratory. He noted that the evidence looked the same at trial as it did on the day he received it from Officer Messer.

Finally, Kathy Shanks, a forensic chemist from the Arkansas State Crime Laboratory, positively identified State's Exhibits 1 and 2 as substances that she had tested and determined contained cocaine and Benzocaine. She was able to identify the evidence because it was marked with her initials, the laboratory case number, and the date on which she performed her analysis of the substances. Ms. Shanks explained the process by which evidence is received and analyzed at the Arkansas State Crime Laboratory. She stated: "a officer or representative of the law enforcement agency will bring the materials to our evidence receiving department. They are cataloged and assigned a number. They are then put in our secure area and locked up until upon which time a chemist is assigned the case [sic]. When we get to that case in our backlog, we then go check out the evidence from our evidence receiving area. We take it up to our desk, or lab bench and we analyze it." Ms. Shanks also testified that when evidence is received at the Arkansas State Crime Laboratory, the "person who takes it in insures that it's in sealed condition [and] they initial or sign their name on the submission sheet." Ms. Shanks further stated that to the best of her knowledge, the evidence was in the evidence-receiving department from the time that Ms. Gray received it until Ms. Schumacher removed it and gave it to Ms. Shanks to perform her analysis. Finally, Ms. Shanks testified that it is lab protocol that once evidence is submitted into evidence receiving, it is taken to a secured area and it remains there until it comes into the possession of the chemist.

██ From our review of the testimony presented by the State in establishing the chain of custody, we cannot say that the trial court abused its discretion in allowing the introduction of State's Exhibits 1 and 2. Although there was conflicting testimony concerning the weight of the evidence, we conclude that this variation

was insignificant, and note that minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *See Harris v. State,* 322 Ark. 167, 907 S.W.2d 729 (1995) *see also Gardner v. State,* 296 Ark. 41, 754 S.W.2d 518 (1988).

Appellant argues that his case is analogous to *Crisco v. State,* 328 Ark. 388, 943 S.W.2d 582 (1997), and that based on our analysis of the facts in that case, we must conclude that the trial court in the present case abused its discretion when it admitted State's Exhibits 1 and 2. In *Crisco,* we were asked to determine whether the trial court had abused its discretion when it admitted evidence after conflicting testimony as to the evidence's description had been offered. While attempting to establish a proper chain of custody, the State entered the testimony of an undercover police officer, who purchased the substance, and the testimony of the chemist at the crime lab, who tested the substance. The police officer identified the evidence as "one bag of off-white powder substance." *Id.* By contrast, the forensic chemist described the evidence as "one triangular piece of plastic containing a tan rock-like substance." *Id.* The chemist also testified that the evidence at issue was a substance which would not ordinarily change colors. *Id.* On appeal, Crisco argued that the varying descriptions of the substance raised an inference that a break had occurred in the chain of custody. *Id.* We agreed with Crisco, and held that the marked difference in the description of the substance by the police officer and the chemist established a significant possibility that the evidence tested was not the same as that purchased by police officer, and reversed the trial court. *Id.*

The facts in *Crisco* are distinguishable from the facts in the case now on review. In the present case, a marked difference in description simply does not exist. The testimony from Officer Leger was that State's Exhibit 1 weighed 0.3 of a gram and State's Exhibit 2 weighed 0.2 of a gram. By contrast, Ms. Shanks testimony was that State's Exhibit 1 weighed 0.1828 of a gram, and State's Exhibit 2 weighed 0.1183 of a gram. The difference in testimony regarding the weight of State's Exhibit 1 was .1172 of a gram, and the difference regarding State's Exhibit 2 was .0817 of a gram[1]. We

---

[1] We note that the slight variation in the weight of the exhibits could have resulted from the differing sensitivity in the scales used by Officer Leger and Ms. Shanks.

do not consider this minor discrepancy sufficient to raise a reasonable probability that a break in the chain of custody occurred. Accordingly, we affirm the trial court.

Circuit court affirmed; court of appeals reversed on petition for review.