John GARNER *v.* STATE of Arkansas

CR 03-764                                        131 S.W.3d 734

Supreme Court of Arkansas
Opinion delivered November 20, 2003

*McDaniel & Wells, P.A.*, by: *Bill Stanley*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. ■ Appellant John Garner was convicted of possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and fleeing in a motor vehicle. He appealed his convictions to the Arkansas Court of Appeals. Sitting *en banc*, the court of appeals affirmed all three convictions in a 5-4 decision. The four dissenting judges would have reversed the convictions of possession of a controlled substance with intent to deliver and possession of drug paraphernalia. This court granted Mr. Garner's petition for review. When we grant a petition for review following a decision by the court of appeals, we review the case as though it had been filed here originally. *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002).

On appeal, Mr. Garner raises five points of error. Because we conclude that there is insufficient evidence to support the convictions for possession of a controlled substance with intent to deliver and possession of drug paraphernalia, we reverse and dismiss those convictions. Thus, it is not necessary to address the point on appeal relating to the definition of constructive possession in the Arkansas Model Jury Instructions 2d.—Criminal. As to all other points on appeal, including the challenge to the sufficiency of the evidence to support the conviction of fleeing, we affirm.

At about midnight on June 3, 2001, Shirley Spencer called the Greene County Sheriff's Department to report suspicious activity near her residence on County Road 632. Ms. Spencer reported that a truck had slowly driven up and down the county road, and then pulled over to the wrong side of the road and stopped. She saw a man get out of the truck and look through the bushes and shrubs in the ditch on the side of the road. Although Ms. Spencer was unable to identify the man, she was able to make out the type of truck and its color because it was parked under a street light. She reported that the truck was a light colored, two-toned Chevrolet or GMC. According to Ms. Spencer, the man went to the north edge of the ditch and appeared to either be picking something up or putting something down.

At the time Ms. Spencer called the sheriff's department to report the suspicious activity, Deputy Nate Hergett had been patrolling Greene County Road 632. Before Ms. Spencer's report reached Deputy Hergett, he had seen a blue Chevy truck travel the same north bound route on County Road 632, not once but twice within a fifteen-minute interval. Upon seeing the truck for the second time, Deputy Hergett turned around and followed it. Ms.

Spencer witnessed the deputy turn around and follow the truck she had just seen leave her property. As soon as a dispatcher relayed the report of a suspicious vehicle on Country Road 632 to Deputy Hergett, he realized that the truck he was following matched the description given by Ms. Spencer and initiated a traffic stop to investigate the matter.

When Mr. Garner stopped and got out of his truck, Deputy Hergett advised him that there had been a report of a suspicious vehicle on County Road 632 that matched Mr. Garner's truck. Shortly thereafter, while Deputy Hergett conducted a routine driver's license check, another deputy arrived on the scene. The two officers requested and received Mr. Garner's consent to search the truck and his person. They found nothing illegal, but they did notice a set of Bushnell extra-wide binoculars in the front seat and a weed eater in the bed of the truck.

Mr. Garner told the officers he had been "weed-eating" on some land he owned that was located five miles from County Road 632. In the meantime, a third officer, Deputy Matt Ring, had arrived on the scene. Because the officers had not found anything illegal or suspicious, they released Mr. Garner and headed back down County Road 632 to the area where Mr. Garner's truck had been seen earlier. The deputies searched the east side of the road and found nothing. Then, they made contact with Ms. Spencer, who told them she had seen the man looking in the bushes on the west side of the road. Following that lead, the deputies found nothing in the area where the man had been seen, but upon searching an area about fifty feet north of the area identified by Ms. Spencer, they found a Bushnell extra-wide binoculars case that contained approximately eighty grams of methamphetamine, various drug paraphernalia, and a letter from James Garner to Chris Garner, who are John Garner's two brothers. The letter made a passing reference to John Garner.

Approximately three hours later, after failing to locate Mr. Garner, the deputies noticed a motorcycle approach the intersection of County Road 632 and Sunset Avenue, which was approximately one-half mile north of the location where the contraband had been found. The driver of the motorcycle ran a stop sign and, upon seeing the deputies, began to flee. The deputies pursued the motorcycle until it crashed, throwing the passenger, Max Burrow, from the rear seat. The driver of the motorcycle fled on foot into the neighboring woods and was never apprehended. Mr. Burrow,

on the other hand, was immediately taken into custody. Deputy Ring positively identified the driver of the motorcycle as John Garner.[1] He also recovered a flashlight with the initials "J.G." engraved on it from the accident site. Mr. Burrow later stated that the driver of the motorcycle was Charles Chamberlain, not John Garner.

Two days later, Mr. Garner was arrested and charged with possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and fleeing in a motor vehicle. After a four-day jury trial, Mr. Garner was convicted on all charges. He was sentenced to forty years' imprisonment for possession of a controlled substance with intent to deliver, ten years' imprisonment and a $10,000 fine for possession of drug paraphernalia, and six years' imprisonment and a $10,000 fine for fleeing in a motor vehicle. The prison terms and fines were to run concurrently.

### Sufficiency of the Evidence

In his first and fifth points on appeal, Mr. Garner challenges the sufficiency of the evidence. Specifically, he first argues that the trial court erred in refusing to direct a verdict in connection with the charge of possession of a controlled substance with intent to deliver and possession of drug paraphernalia. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Mills v. State,* 351 Ark. 523, 95 S.W.3d 796 (2003). Mr. Garner also argues in his fifth point on appeal that there is insufficient evidence to support his conviction of fleeing in a motor vehicle. The preservation of Mr Garner's right against double jeopardy requires that we consider all of his challenges to the sufficiency of the evidence before we consider alleged trial error. *Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003).

In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Polk v. State,* 348 Ark. 446, 73 S.W.3d 609 (2002). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other

---

[1] Deputy Ring relied on his previous observation of Mr. Garner during the initial traffic stop. According to the deputy, he got a good view of the motorcycle rider's face and observed that the clothing worn by the rider was identical to that worn by Mr. Garner at the initial stop.

beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*

### A. Possession of a Controlled Substance with Intent to Deliver and Possession of Drug Paraphernalia

■ In Arkansas, "it is unlawful for any person to . . . possess with intent to . . . deliver a controlled substance." Ark. Code Ann. § 5-64-401 (Supp. 2003). Additionally, "[i]t is unlawful for any person to . . . possess . . . drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to . . . inject, ingest, inhale, or otherwise introduce into the human body a controlled substance . . . ." Ark. Code Ann. § 5-64-403(c)(2)(A) (Supp. 2003). All parties agree there was no evidence that Mr. Garner had actual possession of the contraband at issue. However, possession need not be actual, physical possession, but may be constructive, when one controls a substance or has the right to control it. *See Osborne v. State,* 278 Ark. 45, 642 S.W.2d 251 (1982). Here, the State's theory rested entirely upon an assertion of constructive possession.

■■ In *Hodge v. State,* 303 Ark. 375, 797 S.W.2d 432 (1990), this court was presented with a similar set of facts. Like the case at bar, *Hodge, supra,* involved a conviction based on constructive possession. In that case, we held that the circumstantial evidence presented was insufficient to convict the defendant of possession with intent to deliver methamphetamine. *Id.* We also adopted a joint-occupancy standard for testing the sufficiency of the evidence in criminal prosecutions based on constructive possession: "Where contraband is discovered in jointly occupied premises, and there is no direct evidence that it belongs to a particular occupant, some additional factors must be present linking the accused to the contraband. The State must prove that the accused exercised care, control and management over the contraband." *Id.* at 377-78, 797 S.W.2d at 434. More specifically, we held that where narcotics are found in an area entirely outside the control of the defendant and exposed to the public at large, the

State must provide more definite factors linking the defendant to the contraband than were provided in the *Hodge* case. *Id.*

The evidence in *Hodge* was summarized as follows:

> The evidence presented by the State, to link Hodge to possession of the methamphetamine found on the roadside, included the taped conversations between Hodge and [a drug dealer cooperating with police]; Hodge's meeting with known drug dealers...; and the fact that Hodge fled from the police.

> The evidence presented by Hodge, however, cast overwhelming doubt on his connection to the methamphetamine. Police saw no exchange of contraband or money between Hodge [and the known drug dealers], and no narcotics or large sums of money were found in Hodge's possession. The officer chasing Hodge saw nothing dropped or thrown from the car, although he testified he was following only two car lengths behind. In addition, the amount of contraband discovered far exceeded the intended purchase of one ounce agreed on by Hodge and Spears.

> Hodge further demonstrated that the chase route was heavily traveled, with over 800 cars a day passing by the specific intersection where the drugs were discovered.

> Several sets of fingerprints were lifted from the "Ziploc" bags and the "Pringles" can but none matched those of Hodge or Flowers. (The State, in submitting the Pringles can into evidence, proposed the tenuous theory that if Hodge and Flowers had been eating potato chips, the greasy residue left on their fingers would preclude them from leaving prints.) When the state introduced the bags of methamphetamine in court, the substance emitted an extremely strong odor, typical of this type drug; however, no such odor was detected either in the car or about Hodge and Flowers. Lastly, following his arrest, Hodge was surreptitiously recorded and quizzed about the crime, and denied he was carrying drugs on the evening in question.

*Id.* at 378, 797 S.W.2d at 434. Based on those facts, we held that "the State's evidence fail[ed] to link Hodge to constructive possession of the methamphetamine." *Id.* at 378, 797 S.W.2d at 434.

The evidence in this case can be summarized as follows. Mr. Garner was seen around midnight driving up and down the road where the contraband was found. He was also seen looking for something in the grass on the side of a the road about fifty feet from where the contraband was eventually discovered. The contraband was found in a Bushnell extra-wide binoculars case, and Mr. Garner had a set of Bushnell extra-wide binoculars in his truck. A letter between two of Mr. Garner's brothers, which contained a passing reference to their brother John Garner but made no mention of contraband, was also found with the contraband. Approximately three hours later, the police saw Mr. Garner driving a motorcycle about one-half mile from the area where the contraband was found. It was at this point that Mr. Garner ran a stop sign and fled from the police.

Like the case in *Hodge, supra,* the State's evidence here fails to link Mr. Garner to constructive possession of the contraband discovered by law enforcement. In both *Hodge* and the case *sub judice,* the contraband was found in an area entirely outside the control of the defendant and exposed to the public at large. As in *Hodge,* there is evidence of the defendant fleeing from law enforcement officials. Moreover, in *Hodge* and the case at bar, law enforcement, after stopping the defendant, was unable to detect the strong odor associated with methamphetamine in the defendant's vehicle. Additionally, in both cases there was no evidence of the defendant's fingerprints on the container holding the contraband. In *Hodge, supra,* there was concrete evidence of a taped conversation about the defendant's intent to consummate a drug deal and the defendant's later meeting with known drug dealers. Nothing like that evidence was presented in this case; nor did Mr. Garner flee from police earlier in the evening after being stopped in connection with the suspicious-activity report. Furthermore, he gave consent to search his vehicle and person, but deputies were unable to find any signs of illegal activity. Finally, over three hours had passed following the seizure of the contraband before Mr. Garner fled from the police after running a stop sign located one-half mile from the area where the contraband was found.

Based on this evidence we cannot say that the State produced sufficient evidence of constructive possession; that is, the State failed to provide more definite factors linking Mr. Garner to the contraband than were provided in the *Hodge* case. Accordingly,

we reverse and dismiss the convictions of possession of a controlled substance with intent to deliver and possession of drug paraphernalia.

### B. Fleeing in a Motor Vehicle

Mr. Garner also asserts that there is insufficient evidence to support his conviction of fleeing in a motor vehicle. His argument hinges on a challenge to Deputy Ring's eyewitness identification of him as the perpetrator of the offense.

A person commits the offense of fleeing if he "knows that his immediate arrest or detention is being attempted by a duly authorized law enforcement officer [and he flees], either on foot or by means of any vehicle or conveyance." Ark. Code Ann. § 5-54-125 (Repl. 1997). According to the evidence presented at trial, Deputy Ring saw a motorcycle run a stop sign and attempted to make a traffic stop. The driver of the motorcycle, however, fled reaching speeds approaching ninety miles per hour. In his pursuit, Deputy Ring never lost sight of the motorcycle, and it eventually crashed. The passenger, who was thrown from the back seat, was immediately taken into custody, but the driver successfully escaped on foot.

Deputy Ring testified that he was able to positively identify Mr. Garner as the driver of the motorcycle. It is undisputed that Deputy Ring was in contact with Mr. Garner about three hours prior to the incident. He testified that he recognized Mr. Garner's face as he approached the stop sign on the motorcycle. In addition, Deputy Ring testified that the motorcycle rider was wearing the same clothes that Mr. Garner was wearing three hours earlier at the initial traffic stop. Deputy Ring also testified that he recovered a flashlight with Mr. Garner's initials on it at the motorcycle crash site. The testimony of passenger Max Burrow refuted Deputy Ring's testimony. When initially asked at the accident scene who was driving the motorcycle, Mr. Burrow stated that he did not know. Mr. Burrow testified at trial that Charles Chamberlain was the motorcycle driver during the high-speed chase.

This court has made it patently clear that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003). We have held that one eyewitness's testimony is sufficient to sustain a conviction, and his testimony is not clearly

unbelievable simply because it is uncorroborated or because it has been impeached. *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002). Thus, we conclude that Deputy Ring's eyewitness account is sufficient to support the conviction of fleeing in a motor vehicle.

## Model Jury Instruction

For his second point on appeal, Mr. Garner argues that the trial court erred in refusing to give the jury his proffered instruction on constructive possession in lieu of the Arkansas Model Jury Instruction 2d.—Criminal. *See* AMI—Crim. 2d 6404. He asserts that the trial court erred because the model jury instruction is an incorrect statement of the law. Although Mr. Garner acknowledges that AMI—Crim. 2d 6404 has been approved by this court, *see, e.g., Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003), he claims that in light of subsequent case law, the model jury instruction has become outdated. Because we are reversing his convictions that hinge on proof of constructive possession, we need not address the propriety of the model jury instruction. *See, e.g., Burnette v. State*, 354 Ark. 584, 127 S.W.3d 479 (2003).

## Severance of Charges

For his third point on appeal, Mr. Garner contends that the trial court erred in failing to sever the charges against him pursuant to Rule 22.1 and 22.2 of the Arkansas Rules of Criminal Procedure. Arkansas Rule of Criminal Procedure 22.1 provides:

> Two (2) or more offenses may be joined in one (1) information or indictment with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
>
> (a) are of the same or similar character, even if not part of a single scheme or plan; or
>
> (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ark. R. Crim. P. 22.1 (2003). Rule 22.2 states:

> (a) Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character

and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of offenses:

(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

(ii) if during trial, upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

Ark. R. Crim. P. 22.2 (2003). The decision to sever offenses is discretionary with the trial court. *Kemp v. State,* 348 Ark. 750, 74 S.W.3d 224 (2002). Moreover, we will affirm a trial court's denial of a motion to sever if the offenses at issue were part of a single scheme or plan or if the same body of evidence would be offered to prove each offense. *Id.*

██ ██ In the instant case, Mr. Garner asserts that nothing about the fleeing offense related to a determination of whether or not he possessed any contraband. The State's theory of the case was that Mr. Garner was returning on the motorcycle to look for the contraband left on the side of the road. As noted earlier, the officers saw Mr. Garner approach the intersection of County Road 632 and Sunset Drive three hours after he had been seen searching through the grass on the side of the county road. As such, the State asserted that the fleeing was part and parcel of a criminal episode. We will consider evidence of proximity in time and space to determine whether a single scheme or plan existed to preclude severance of separate charges. *Dillard v. State,* 333 Ark. 418, 971 S.W.2d 764 (1998). Here, Mr. Garner's act of fleeing occurred within hours of the initial traffic stop and the subsequent discovery of the contraband, and it occurred at an intersection located about one-half mile from where the contraband was found. Under these facts, we cannot say that the trial court abused its discretion in refusing to sever the charges.

*Admission of Flashlight*

For his final point on appeal, Mr. Garner maintains that the trial court erred in admitting the flashlight with the initials "J.G." on it. The flashlight was recovered by Deputy Ring at the motorcycle crash site. Prior to trial, Mr. Garner sought and received law enforcement's entire case file in connection with his criminal charges. None of the documents or incident reports in the file indicated that a flashlight had been recovered at the scene of the crash. Then, on the day that the trial was originally scheduled to begin, Deputy Ring produced the flashlight at issue here and an incident report. The report, which contained a detailed account of the flashlight recovery, had not been included in the original case file. Deputy Ring testified that he had placed the flashlight in his own locker. Based on the discovery of this new evidence, the trial court granted a continuance in order to allow defense counsel to adequately develop a strategy for addressing the discovery of the new incident report and flashlight. Thereafter, the court denied Mr. Garner's request to prohibit the introduction of the flashlight.

On appeal, Mr. Garner continues to assert that the State failed to adequately establish a chain of custody in connection with the flashlight. The purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with. *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001). To prove authenticity of evidence, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.* To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Id.* In addition, it is not necessary that every possibility of tampering be eliminated; it is only necessary that the trial court, in its discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.* On review, this court will not reverse a ruling on an evidentiary matter regarding the admissibility of evidence absent an abuse of discretion because such matters are left to the sound discretion of the trial court. *Id.*

The argument, as framed by Mr. Garner, is that "because the only individual with knowledge of this evidence prior to trial was Deputy Matt Ring, upon whom the state relied to establish the authenticity of the same, admission of the flashlight was erroneous." As support for this argument, Mr. Garner points this court to *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997), where we held that the chain of custody was not properly established because the methamphetamine at issue there was described differently by the undercover officer and the chemist. We explained that the drug involved in *Crisco* was a readily interchangeable substance. *Id.* Mr. Garner's reliance on *Crisco, supra,* is misplaced.

First, the flashlight at issue here is not a substance that is readily interchangeable. Second, there is no discrepancy in the description between persons handling the evidence. In fact, Deputy Ring was the only person who handled the flashlight. Mr. Garner cites no case that indicates a piece of evidence cannot be authenticated by the only person who controlled the evidence. Nonetheless, he suggests that the following four factual allegations support a reversal: (1) only Deputy Ring's report referenced a flashlight; (2) only Deputy Ring's report was handwritten; (3) Deputy Ring put the flashlight in his own locker until the day of trial; and (4) the sheriff's office could have confiscated the flashlight on a prior arrest of Mr. Garner or his brother James Garner, who has the same initials. These allegations merely attack the credibility of Deputy Ring. We will not weigh the credibility of a witness's testimony. *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003). Accordingly, we cannot say that the trial court abused its discretion as to the admissibility of the flashlight.

In sum, we conclude that the State failed to provide sufficient evidence to support the convictions based on constructive possession. However, there was sufficient evidence to support the conviction of fleeing. Moreover, we conclude that the trial court did not abuse its discretion in refusing to sever the charges and in admitting the flashlight into evidence. Accordingly, we reverse and dismiss the convictions for possession of a controlled substance with intent to deliver and possession of drug paraphernalia. We affirm the conviction of fleeing in a motor vehicle.

Reversed and dismissed in part; affirmed in part.