Keith Allen WATSON *v.* STATE of Arkansas

CR 04-126                                                    188 S.W.3d 921

Supreme Court of Arkansas
Opinion delivered June 24, 2004

*H. Oscar Hirby*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. ■ Appellant Keith Allen Watson was convicted in the Pulaski County Circuit Court of theft of property, Class B felony, and sentenced to two years' probation and a $100 fine. The property in question consisted of a 2001 Toyota Truck and several cases of frozen meat. Appellant appealed his conviction to the Arkansas Court of Appeals, which affirmed in an unpublished opinion. *See Watson v. State*, CACR 02-1305 (Ark. App. January 14, 2004). He subsequently petitioned this court for review of that decision, which we granted pursuant to Ark. Sup. Ct. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *See Porter v. State*, 356 Ark. 17, 145 S.W.3d 376 (2004); *Zangerl v. State*, 352 Ark. 278, 100 S.W.3d 695

(2003). For reversal, Appellant argues that the trial court erred in denying his motion for a directed verdict and in denying his motion to dismiss for lack of a speedy trial. We find no error and affirm.

## I. Sufficiency of the Evidence

■■ For his first point for reversal, Appellant argues that the trial court erred in denying his motion for a directed verdict on the sole charge of theft of property. It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. See *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004); *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003); *Reed v. State*, 353 Ark. 22, 109 S.W.3d 665 (2003). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id*. We will affirm a conviction if substantial evidence exists to support it. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id*.

■ Appellant was charged with theft of property pursuant to Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2003), which provides that a person commits theft if he or she "[k]nowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof[.]" Subsection (b)(1)(A) provides that theft is a Class B felony if the property is valued at $2,500 or more. The phrase "exercises unauthorized control" in section 5-36-103(a)(1) is directed at a bailee who lawfully takes control of the property, but subsequently appropriates it to his own use. *Chaviers v. State*, 267 Ark. 6, 588 S.W.2d 434 (1979). Such a deviation from the terms of a bailment is theft only if it is done with the requisite purpose to deprive the bailor. *Id*. With these legal requirements in mind, we turn to Appellant's argument.

We initially note that Appellant does not dispute that the truck belonged to his employer, that the property was valued at more than $2,500, and that he never returned the property. He contends, however, that the State failed to prove that he exercised unauthorized control over the property, or that his actions were done with the purpose of depriving the owner of the property. We disagree.

The record reveals that in January 2001, Appellant was working as a salesman for Family Foods, a Little Rock company selling bulk quantities of frozen meat directly to individual customers. The company was owned by Charles and Elizabeth Shaw. As part of his job, Appellant was given the use of a company truck, for which he was required to pay $40 per day. He was given the meat on consignment for $100 per case, which had a retail value of $354 per case. Pursuant to a written agreement, Appellant was to return to the company with the truck by 9:00 p.m. each work day to settle up his sales. It was at that time that he was required to pay for the cases of meat that he had sold and return any unsold product to the company.

On the date in question, January 10, 2001, Appellant took the truck and seven cases of meat. According to Charles Shaw, Appellant telephoned him later that night and told Shaw that he was on his way back with the truck. Appellant called back forty minutes later, telling Shaw that he was going to stay the night with a friend in Searcy and that he would be back the next morning. After Shaw initially protested that this was not the normal protocol, he told Appellant to go ahead and stay with his friend and that he would see him in the morning. Appellant did not return with the truck the next morning, and Shaw never heard from him again. Two days later, Shaw's wife called the Little Rock Police Department and reported the truck and the cases of meat stolen. Approximately one week later, on January 17, 2001, police recovered the truck in a motel parking lot in Hot Springs. The following day, Shaw went to Hot Springs and paid $85 to get the truck out of the impound lot. The cases of meat were never recovered.

Elizabeth Shaw confirmed her husband's testimony that she called the police to report the property stolen on January 12, 2001. She stated that she told the police detective that an employee had taken the truck and some cases of meat and had not shown up for two days. She stated that the last time she or her husband had heard from Appellant was January 10. She testified that the written agreement signed by Appellant specifically provided that if anything should happen to the frozen product, such as being lost or stolen, criminal charges would be brought against him within twenty-four hours unless he provided the total cost of the product and any other charges that accrued for the day. She also testified that she knew of at least two other employees against whom she and her husband had pursued criminal charges.

Appellant testified that on the date in question he had been making deliveries in Batesville when the weather became bad. He decided to stay the night with a friend in Searcy. He said that when he called Charles Shaw to tell him that he would not be back that night, Shaw became angry, told him he was fired, and threatened to kill him if he did not return his truck. The next day, Appellant drove back from Searcy, through Little Rock, and onto Hot Springs, where his girlfriend lived. He decided to leave Shaw's truck in a nearby motel parking lot in Hot Springs. He stated that he telephoned Shaw and left a message telling him where he could find the truck. He testified that the reason he did not return the truck to Shaw was that he was afraid that Shaw would become violent toward him. He based his fear on Shaw's allegedly violent behavior during a past incident in which Appellant failed to return the truck and unsold product as required. He admitted that he had made a mistake in not returning the truck to the Shaws, but he maintained that he did not take the truck with the purpose of depriving the Shaws of its use. He also admitted that he did not return the unsold cases of meat and that the meat had spoiled while it was in his possession.

Viewing the evidence in a light most favorable to the State, as is our standard, we conclude that the foregoing testimony demonstrates sufficient evidence that Appellant knowingly took or exercised unauthorized control over the Shaws' property with the purpose of depriving them of the use of that property. Appellant's own testimony demonstrates that he was not authorized to do what he did. He stated that when he told Charles Shaw that he was not coming in that night, Shaw immediately fired him and demanded that he return the company truck. When Appellant failed to return the truck, along with the cases of meat that he had not yet paid for, his use and control over the property was unauthorized.

As for the issue of his intent to deprive the owners of the property, we similarly conclude that the evidence is sufficient. A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Coggin*, 356 Ark. 424, 156 S.W.3d 712; *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003); *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003). Because intent cannot be proven by direct evidence, the jurors are allowed to draw upon their common knowledge and experience to infer it from the circumstances. *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370

(2002); *Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000); *Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1990). Moreover, because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

In the present case, the circumstances surrounding Appellant's actions demonstrate his intent or purpose to deprive the Shaws of their property. He specifically defied Charles Shaw's instruction to return the truck and unsold cases of meat to Little Rock the following morning, and then he deliberately chose to leave the truck in a motel parking lot in Hot Springs without any word to the Shaws as to where the property was.

It is of no consequence that Appellant claimed to have left a message on the Shaws' answering machine the following day telling them where he had left the truck. His testimony on this point was directly refuted by the Shaws, who both testified that after Charles spoke to Appellant on the evening of January 10, 2001, they never heard from him again and were never informed of the whereabouts of the truck until it was recovered a week later by the Hot Springs police. It is for the jury, not the appellate court, to determine the credibility of witnesses. *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734; *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003). The jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In convicting Appellant, the jury clearly found the Shaws' testimony more credible than his.

Moreover, the jury is entitled to draw upon common sense and experience in reaching its verdict. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). It defies common sense to think that one who has reported property stolen would not be interested in its prompt return. The fact that the property in this case was not recovered for a week and that it was the police, not the Shaws, who recovered it supports the Shaws' testimony that they did not receive any message from Appellant about the truck's location the following day.

Finally, we reject Appellant's suggestion that the evidence is insufficient because he later paid the Shaws $1,000 for the loss of the unsold cases of meat, in exchange for their signing affidavits releasing him from further liability. In the first place, we

note that the affidavits pertain solely to the theft resulting from the loss of the meat, not from the loss of use of the truck. In the second place, we fail to see the relevance of such affidavits, since the decision whether to bring a criminal charge rests with the prosecutor, not with the individual victims. *See Renfro v. State*, 331 Ark. 253, 962 S.W.2d 745 (1998). The fact that the Shaws had been made whole for the loss of the meat and had agreed to release Appellant from any civil liability has no significance in the criminal trial. Thus, the jury was not required to lend any credence to these affidavits. We thus affirm Appellant's conviction.

## II. Speedy Trial

Appellant's second argument for reversal is that the trial court erred in denying his motion to dismiss for lack of a speedy trial. He contends that the time for speedy trial commenced running on March 1, 2001, the date that the affidavit for probable cause to obtain an arrest warrant was filed in the Little Rock District Court. Appellant argues that this is the date that the charge was filed under Ark. R. Crim. P. 28.2(a).

The law regarding speedy trial is well settled. Pursuant to Ark. R. Crim. P. 28.1, the State is required to try a criminal defendant within twelve months, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3. *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004); *Swartz v. Piazza*, 354 Ark. 334, 123 S.W.3d 877 (2003). This means that the accused must be tried within twelve months of the date the charges were filed, except that if prior to that time the defendant has been continuously held in custody, or has been lawfully at liberty, the time for trial commences running from the date of arrest. *Id.* (citing Rule 28.2). If a defendant is not brought to trial within the requisite time, Ark. R. Crim. P. 30.1 provides that the defendant will be discharged, and such discharge is an absolute bar to prosecution of the same offense and any other offense required to be joined with that offense. *Id.*

The issue in this case is whether the time for speedy trial began to run on the date the charge was filed or on the date of arrest. It is the earlier of those dates that starts the speedy-trial clock running. Appellant contends that the relevant date is March 1, 2001, which he claims is the date that the charge was filed. He considers the charging instrument to be the affidavit for arrest warrant.

In contrast, the State asserts that the relevant date is November 26, 2001, the date that Appellant was arrested. The State contends that the affidavit for arrest warrant is not a charging instrument and that this court has previously rejected such an argument. We agree with the State.

This court has consistently held that for felony offenses, the charge is filed on the date that the information or indictment is filed in circuit court. See Jackson v. State, 334 Ark. 406, 976 S.W.2d 370 (1998); Marks v. State, 332 Ark. 374, 965 S.W.2d 764 (1998); Archer v. Benton County Circuit Court, 316 Ark. 477, 872 S.W.2d 397 (1994). While an affidavit for an arrest warrant may be a sufficient charging instrument for filing a misdemeanor charge, see Hagen v. State, 315 Ark. 20, 864 S.W.2d 856 (1993), it is not sufficient for filing a felony charge. As this court observed in Archer, 316 Ark. 477, 872 S.W.2d 397, our constitution mandates that felonies must be charged by grand jury indictment or by information filed in the circuit court by the prosecuting attorney. City attorneys cannot file felony charges, and municipal courts are without jurisdiction to try felony cases. Id.

In the present case, the affidavit for arrest warrant was filed on March 1, 2001, in the Little Rock District Court.[1] It sought a warrant to arrest Appellant for the offense of theft of property, Class B felony. Because the offense committed was a felony, rather than a misdemeanor, the affidavit was not a sufficient charging instrument under our constitution or our case law. As stated above, felonies may only be charged by indictment or information filed by the prosecuting attorney in circuit court. Thus, the charging instrument in this case was the felony information that was filed by the prosecuting attorney on February 13, 2002. Because Appellant was arrested prior to the date that the charge was filed in circuit court, the time for speedy trial commenced upon the date of his arrest, November 26, 2001. His trial was held on June 20, 2002, well within the twelve-month period for speedy trial. We thus affirm the trial court's denial of the motion to dismiss.

---

[1] At the time, the court was known as the Little Rock Municipal Court. With the passage of Amendment 80, all municipal courts were reclassified as district courts.

Before we leave this point, we note Appellant's related argument that his right to due process was violated because the State failed to promptly arrest him on the felony warrant. He argues that because the State knew of his whereabouts, the failure to promptly arrest him on the warrant prejudiced him. Specifically, he contends that the State's failure amounted to negligence and caused an "oppressive delay" and that, accordingly, the time for speedy trial began running on the date that the affidavit for arrest warrant was filed. We do not reach the merits of this due-process argument as it is not apparent from the record that it was presented to the trial court. Rather, it appears that this particular argument was raised for the first time in Appellant's reply brief filed in the court of appeals. This court has consistently held that a party is bound by the scope of the arguments made at trial, and we will not consider an argument raised for the first time on appeal. *See, e.g., Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003); *Ellison v. State*, 354 Ark. 340, 123 S.W.3d 874 (2003); *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003).

In any event, there is no merit to Appellant's due-process argument. This court has previously recognized that the due-process clause of the Fifth Amendment only requires dismissal of a criminal charge if the defendant shows that the pre-indictment delay caused substantial prejudice to the defendant's right to a fair trial and that the delay was an intentional device to obtain a tactical advantage over the accused. *Alexander v. State*, 257 Ark. 343, 516 S.W.2d 368 (1974) (citing *United States v. Marion*, 404 U.S. 307 (1971)). *See also Scott v. State*, 263 Ark. 669, 566 S.W.2d 737 (1978); *Young v. State*, 14 Ark. App. 122, 685 S.W.2d 823 (1985). Appellant has failed to offer any proof whatsoever that the six-month delay in arresting him caused substantial prejudice. Moreover, he does not even argue that the delay was an intentional, as opposed to a negligent, act on the part of the prosecutor to obtain a tactical advantage over him.

Circuit court affirmed; court of appeals affirmed.

HANNAH, J., not participating.