Ronald Joe WEST *v.* STATE of Arkansas

CA CR 02-927                                    120 S.W.3d 100

Court of Appeals of Arkansas
Division II
Opinion delivered May 14, 2003

*Sherwood & Merritt PLLC*, by: *Sara F. Merritt*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Ronald Joe West, was convicted at a bench trial of possession of methamphetamine with the intent to deliver, possession of drug paraphernalia, and misdemeanor possession of marijuana, for which he was sentenced to a total of seven years' imprisonment in the Arkansas Department of Correction. On appeal, he argues that the trial court erred in refusing to suppress items seized from his car. Further, he argues that the trial court erred by permitting the State to elicit hearsay from its witnesses and by accepting inadmissible evidence to establish appellant's habitual-offender status. We affirm.

The suppression hearing and the bench trial were held simultaneously. Officer Jason Hopkins of the Sherwood Police Department testified that on May 23, 2001, while he was parked on a parking lot, appellant's wife, Brenda West, stopped and reported that appellant was following her and that she had a protection order against him. She showed Hopkins the protection order, and Hopkins determined that it was valid. Appellant drove by, and Hopkins stopped appellant's vehicle. Appellant told Hopkins that he was not following his wife and that it was just a coincidence that they were in the same area. Hopkins told appellant that there was a protection order. Appellant, who was aware of the protection order, told him that he was not trying to harass her and that it would not happen again.

Hopkins also testified that other officers had told him that on May 18, 2001, appellant had contacted Stephanie Giunta, who worked with and was a friend of Brenda West. Appellant had called her home at all hours of the night wanting to know Brenda West's location. Giunta told the officer that he had called at 3:00 a.m., and she was worried that something was going to happen. The officers were taking Giunta's statement outside her place of employment when appellant drove by. Once they stopped him, the officers saw next to appellant a pair of binoculars, a notepad, and a pen. The officers told him that if he returned to Giunta's

place of employment or near her residence on Brierly in Sherwood, he would be placed under arrest.

Hopkins further testified that around 11:45 p.m. on June 12, 2001, he received a call about a suspicious vehicle that had backed into the driveway of a vacant duplex on Stafford in Sherwood. The callers, who resided next door, stated that the car had been there off-and-on for two or three weeks, leading them to worry that the car might be involved in illegal activity. Lieutenant Norman Golden later testified that he spoke to the neighbors, who told him that they had seen the car in the neighborhood several times and had decided that if it was seen again and was parked, then they would call the police. Hopkins testified that Stafford intersected with Brierly, and upon arriving, he saw that the car was parked in a driveway directly across from Brierly on Stafford where there was a clear view of Giunta's residence, which was one-half a block away. Hopkins turned on his spotlight, surprising appellant, who was in the vehicle. Hopkins noticed that next to appellant was a large, open briefcase and some binoculars.

While Hopkins did not recognize appellant initially, he remembered him when appellant told him his name. Appellant told Hopkins that he was looking for his wife. He said that he had been by her place of employment, and she was not there. He thought that she might be coming to Giunta's residence because he believed that his wife had been staying at and visiting the residence and that he had backed into the driveway to wait for his wife. Appellant also stated that he wanted to talk to his wife because two days earlier he had an argument with her and had accidentally kicked a dent in her new car, and he wanted to fix it. Appellant told Hopkins that there was an order of protection that had been updated.

Hopkins then placed appellant under arrest for harassment and criminal trespass. Hopkins testified that he arrested appellant for harassment because appellant was aware of the protection order and had previously been warned not to go near Giunta's residence. Hopkins further testified that he thought Brenda West was the victim of harassment even though he did not know whether she was at the residence. He did not, however, contact Brenda

West or Giunta. Hopkins also testified that he did not arrest appellant for violating the order of protection because appellant could not show him a current copy of the order and because the dispatcher could not find it. At the conclusion of Hopkins's testimony, the State submitted as evidence on the issue of probable cause the final order of protection. The order, filed May 31, 2001, provided that appellant was prohibited from contacting Brenda West. Further, the order provided that appellant was "enjoined and restrained from doing, attempting to do, or threatening to do, any act injuring, mistreating, molesting or harassing" Brenda West.

Appellant was transported to the police department, and Lieutenant Golden inventoried the vehicle. He found what was later determined to be approximately eleven grams of methamphetamine hydrochloride and one and six-tenths of a gram of marijuana. Also found was a sum of cash between nine and ten thousand dollars and a straw with methamphetamine residue.

Brenda West testified for appellant. She stated that after the protection order was entered, she never spent the night at Giunta's residence. She also testified that she did not know on June 12 that appellant was outside Giunta's residence and consequently she was not harassed that particular night. She further testified that Giunta was not home that night and likewise did not know of appellant's presence. She admitted, however, that Giunta was a friend, that she would visit with Giunta at the residence, and that appellant was aware that she went over to the house. She also testified that the order of protection did not exclude appellant from Giunta's residence.

Appellant first contends that the trial court erred in refusing to grant his motion to suppress the items seized from his vehicle. He argues that the police did not have probable cause to arrest him on either the charge of criminal trespass or harassment.

Arkansas Rule of Criminal Procedure 4.1(a)(iii) (2003) provides that "[a] law enforcement officer may arrest a person without a warrant if . . . the officer has reasonable cause to believe that such person has committed any violation of the law in the officer's presence[.]" "Reasonable or probable cause exists where there is a reasonable ground of suspicion supported by cir-

cumstances sufficiently strong in themselves to warrant a cautious person to believe that a crime has been committed by the person suspected." *Jones v. State*, 348 Ark. 619, 631, 74 S.W.3d 663, 671 (2002). Further, "[i]n assessing the existence of reasonable or probable cause, our review is liberal and is guided by the rule that probable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction." *Id.* The burden of demonstrating error rests on the appellant. *Id.* Also, "[a]n arrest shall not be deemed to have been made on insufficient cause . . . solely on the ground that the officer . . . is unable to determine the particular offense which may have been committed." Ark. R. Crim. P. 4.1(c); *Yocum v. State*, 325 Ark. 180, 188-89, 925 S.W.2d 385, 389 (1996); *Crail v. State*, 309 Ark. 120, 123-24, 827 S.W.2d 157, 158-59 (1992).

■ Even though Hopkins testified that he did not arrest appellant for violating the protective order, we conclude that there was probable cause to arrest appellant for the offense of violation of an order of protection. In pertinent part, "[a] person commits the offense of violation of an order of protection if" after such an order has been issued and the person has received notice of it, "[h]e knowingly violates a condition of an order of protection. . . ." Ark. Code Ann. § 5-53-134(a) (Repl. 1997). Here, the order provided that appellant was "enjoined and restrained from doing, attempting to do, or threatening to do, any act injuring, mistreating, molesting or harassing" Brenda West. Appellant's statement regarding his attempt to contact Brenda West, coupled with his statement that there was an updated order of protection, provided Hopkins with probable cause to believe that appellant was committing the offense of violation of an order of protection by attempting to harass Brenda West. As Rule 4.1(c) indicates, Hopkins's inability to determine at the time of the arrest the particular offense that appellant had committed did not make the arrest illegal. Consequently, we conclude that because the arrest was valid, the trial court did not err in refusing to suppress the evidence seized from appellant.

■ Appellant next argues that the trial court erred in permitting the State to introduce hearsay testimony in three separate instances. First, we note that appellant acknowledges that the

court did not rule on one of his hearsay objections. It is appellant's burden to obtain a ruling, and we do not address an argument when there was no ruling made at trial. *See, e.g., Alexander v. State*, 335 Ark. 131, 133-34, 983 S.W.2d 110, 111 (1998). In the first of the other two instances, Hopkins testified, as described earlier, that the callers who lived next door had stated that a suspicious vehicle was backed into a driveway, that the car had been there off-and-on for two or three weeks, and that they were worried that the car might be involved in illegal activity. Appellant objected to the testimony, contending it was hearsay. The State replied that it went to "probable cause." The court permitted the testimony, concluding that it was not offered for the truth of the matter asserted. In the second instance, Lieutenant Golden testified that he spoke to the neighbors and was told that the car had been seen in the neighborhood. Appellant made a hearsay objection, and the court overruled the objection.

■ ■ "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2003). An out-of-court statement is not hearsay if it is offered to show a course of conduct or basis of action. *Nottingham v. State*, 29 Ark. App. 95, 98, 778 S.W.2d 629, 630 (1989). Here, the testimony was offered to explain why the officers were investigating the parked car and not for the truth of the matter asserted. Because it was introduced for the purpose of showing the basis for their actions and was relevant to the issue of probable cause, which was challenged by the appellant, this testimony was not hearsay. Therefore, the trial court did not err in allowing its introduction. *See Nottingham, supra* (holding that testimony was not hearsay because it was introduced for the purpose of showing the basis for an officer's actions and was relevant to the issue of reasonable cause).

Appellant also raises three issues regarding sentencing. During appellant's testimony on his own behalf, he admitted in response to the State's questioning that he had previously been convicted in federal court of possession of five hundred grams of cocaine with the intent to distribute. Appellant also admitted that he had been convicted of theft by receiving. Appellant then objected to the State's questioning of appellant about the theft-by-

receiving conviction, arguing that the conviction was more than ten years old and could not be used for impeachment. In response, the State remarked that it was "going for habitual purposes." The court replied, "Yeah, I think it's fair game."

Upon the court finding appellant guilty, the State asked that the court consider his status as a habitual offender, noting that appellant had stated under oath that he had been convicted of two prior offenses. Appellant objected, arguing that it was improper to establish appellant's habitual-offender status through his own testimony. The court concluded that appellant was a habitual offender with two or more prior felonies. At a subsequent hearing on sentencing, the State introduced into evidence the records relating to appellant's prior convictions. Appellant stated that while he did not object to the federal conviction, he objected to the use of the 1978 theft-by-receiving conviction because he was sentenced under Act 378 and the conviction had been expunged. The court waived sentencing and asked the parties to submit briefs. At a later hearing, the court concluded that expunged convictions could be used to establish habitual-offender status. The court sentenced appellant to seven years' imprisonment and noted that this was the "presumptive sentence range" and that the misdemeanor conviction would merge.

■ Appellant first argues that it was improper for the State to use his testimony at the bench trial to establish his habitual-offender status. When the State questioned appellant, however, appellant did not argue that the testimony could not be used to prove habitual-offender status, even after the State informed the court that the testimony was being elicited for that purpose and the court concluded that the testimony was "fair game." Appellant's failure to make a contemporaneous objection to this testimony precludes him from arguing on appeal that the trial court erred in admitting the evidence. *Evans v. State*, 310 Ark. 397, 398, 836 S.W.2d 384, 385 (1992).

■ Second, citing Rule 609 of the Arkansas Rules of Evidence, appellant argues that the trial court erred by allowing the State to impeach appellant with a conviction that was more than ten years old. Appellant's argument is without merit. It is appar-

ent from the above-described colloquy that the State's purpose in eliciting this testimony was not for impeachment but for establishing appellant's habitual-offender status and that the court considered the testimony for that purpose. We affirm on this point.

 Third, appellant argues that because the theft-by-receiving conviction was expunged pursuant to Act 378 of 1975, the conviction cannot be used for enhancement purposes. However, in *Gosnell v. State*, 284 Ark. 299, 681 S.W.2d 385 (1984), the Arkansas Supreme Court concluded that a conviction expunged under that act may be used to enhance a defendant's sentence as an habitual offender. We affirm on this point as well.

Affirmed.

GRIFFEN and BAKER, JJ., agree.