Kendra Katrise DeSHAZER  *v.*  STATE of Arkansas

CA CR 05-903                                          230 S.W.3d 285

Court of Appeals of Arkansas
Opinion delivered March 1, 2006

*Stacy D. Fletcher*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. After a bench trial, the Pulaski County Circuit Court convicted appellant Kendra Katrise DeShazer of class-B-felony theft of property and seven counts of second-degree forgery and sentenced her to thirty years in the Arkansas Department of Correction. Appellant appeals her convictions challenging the sufficiency of the evidence.[1] We find no merit to her argument and affirm.

Testimony at trial established that on October 30, 2003, appellant entered a USA Check Casher's store and presented a cashier's check from Arvest Bank in the amount of $9,900. The check purportedly was remitted by an Anne Jablorski and made payable to appellant.

---

[1] By agreement of the parties, the trial court simultaneously considered a petition to revoke appellant's probation in case number CR-2002-2641. That petition was granted, and appellant received a concurrent, twenty-year sentence. Appellant's argument on appeal challenges her convictions, not the revocation of her probation; however, her addendum contained the judgment entered following the revocation rather than the judgment from which the appeal was taken. The State supplied the judgment for the appealed convictions in its supplemental addendum.

Tiffany Young was the employee of USA Check Casher who conducted the transaction upon which the charges against appellant were based. She testified, that when appellant presented the check that she informed appellant that the store did not have enough cash on hand to cash it. She explained that in response to that information, appellant requested that Young issue her six money orders (five in the amount of $1,000 each and one in the amount of $575) and the remainder in cash. Young telephoned Arvest Bank to verify the check and received verification from the bank. Young conversed with appellant during the transaction, discussing appellant's proposed use of the money orders to pay for cosmetic surgery. Young also testified that nothing seemed out of the ordinary at all during the transaction and that appellant provided all of the information requested of her. Young became aware of problems with the cashier's check when she was contacted by a police detective and shown a photo array. At that time, she identified appellant's photo as the person who came into the store, presented the cashier's check, and received the cash and money orders for it.

Toni Sandall, who works in the risk-and-operations department at Arvest Bank, examined the check, which had been admitted as State's Exhibit 1, and testified that it was not issued by an Arvest Bank. She explained the details that supported her conclusion, including the fact that the printed dollar amount on the check reading "pay exactly $9900.00 dol cts," was in a different typeface than that used by machines that Arvest uses for cashier's checks. Sandall also explained that she was familiar with Amanda Carter, whose signature purportedly appeared on the cashier's check and that the signature was not Carter's. Moreover, Sandall described the bank's procedure for issuing a cashier's check, specifically that when a cashier's check is made, there must be a corresponding remitter to someone's account, but she found no such remitter in her examination of the bank's records. She further testified that the check had disappeared from the Breckenridge branch located on Rodney Parham Road in Little Rock, but Carter did not work at that branch. She also confirmed that appellant was not an employee of the bank.

Amanda Carter similarly reviewed the check and testified that the signature reading "Amanda Carter" was not hers. She verified that she did not issue that check, nor did she work at the Breckenridge branch. She also described the discrepancies between the typeface on the check and the typeface used by the bank

when a check is issued through them. She confirmed that only employees of the bank should have access to the cashier's checks, that the cashier's check had all of the information required for a check of that type, and that an average individual would think it looked like a normal check.

Mike Rushin, appellant's landlord, testified that appellant used the $575 money order to pay him rent. Detective Christian Sterka of the Little Rock Police Department testified that in addition to the money order given to Rushin for rent, four of the other $1000 money orders were signed by Kendra DeShazer made payable to a "Gene Sloan, aesthetic plastic surgeon."

A person commits the crime of second-degree forgery if, with purpose to defraud, he alters any written instrument that was purported to be or calculated to represent if completed the act of a person who did not authorize that act and that instrument is a "contract, assignment, . . . commercial instrument, . . . or other written instrument that does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." Ark. Code Ann. § 5-37-201(a), (c)(1) (Repl.1997). Further, "[a] person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202(1) (Repl.1997).

The purpose of the statute against forgery is to protect society against the fabrication, falsification, and the uttering of instruments which might be acted upon as being genuine. *Mayes v. State*, 264 Ark. 283, 294, 571 S.W.2d 420, 427 (1978). The law should protect, in this respect, the members of the community who may be ignorant or gullible as well as those who are cautious and aware of the legal requirements of a genuine instrument. *Id.* An instrument is not the subject matter of forgery only where it is so defective on its face that, as a matter of law, it is not capable of defrauding anyone. *Id.*

Our theft-of-property statute provides in part that a person commits the crime of theft of property if he "[k]nowingly obtains the property of another person, by deception . . ., with the purpose of depriving the owner thereof." Ark. Code Ann. § 5-36-103(a)(2) (Supp.2003). And "[a] person acts knowingly with respect to his conduct . . . when he is aware that his conduct is of that nature. . . ." Ark. Code Ann. § 5-2-202(2) (Repl.1997).

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State,

considering only the evidence that supports the verdict, and we affirm if substantial evidence exists to support it. *Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Further, a criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime, and because intent cannot be proven by direct evidence, the fact finder is allowed to draw upon common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

Appellant claims on appeal, as she did in her timely motion to dismiss at trial, that there was no evidence that her actions were unauthorized. She emphasizes that the witnesses testified that the average person would not know from looking at the cashier's check that the check was not issued by Arvest Bank. Appellant urges us to accept that testimony establishing the check as a forgery focused on details that were uniquely known to the bank, such as the lack of offsetting credits in the bank's accounting and the typeface of the bank's printer. She also emphasizes the fact that she was never an employee of the bank which negated an inference that she had access to a blank cashier's check or could have recognized the check as a forgery. She concludes that because there was no evidence that she took the check from the bank, and that the only way to tell the check was invalid was to have knowledge that was not available to the average person, that there was insufficient proof to support a finding of intent on either crime. Appellant argues that nothing connected her to the check except her possession of it.

The only way that we could find merit to appellant's argument is to find that the circumstances of the crime could not support an inference that appellant knew the cashier's check was a forgery.[2] Our supreme court's precedents prohibit our reaching that conclusion. The drawing of reasonable inferences from the testimony is for the trial judge as fact-finder, not this court. *Core v.*

---

[2] Appellant does not argue that the State impermissibly divided the forgery charges into each money order and cash disbursement, even though the forgery was complete when she presented the single cashier's check.

*State*, 265 Ark. 409, 578 S.W.2d 581 (1979). Possession of a forged instrument by one who offers it, without any reasonable explanation of the manner in which she acquired it, warrants an inference that the possessor committed the forgery or was an accessory to its commission. *McGirt v. State*, 289 Ark. 7, 708 S.W.2d 620 (1986) (holding that "the crime of forgery was complete upon his being in possession of the forged instrument, or upon his attempt to pass the check, or upon his passing of the check"); *Mayes, supra* (holding that "possession of a forged instrument by one who offers or seeks to utter it without any reasonable explanation of the manner in which he acquired it warrants an inference that the possessor committed the forgery or was a guilty accessory to its commission); *see also Faulkner v. State,* 16 Ark. App. 128, 697 S.W.2d 537 (1985).

■ Appellant testified during the revocation portion of the trial for the limited purpose of addressing specific issues related to the revocation proceeding. She did not testify during the portion of the trial addressing the forgery and theft-of-property charges, nor offer a reasonable explanation of the manner in which she acquired the forged check through other evidence. The State relies solely upon the permissible inference of her guilt. Because the lack of any reasonable explanation of the manner in which appellant acquired the forged check warrants an inference that the possessor committed the forgery or was an accessory to its commission, we cannot say the trial court erred in inferring appellant's intent.

Accordingly, we affirm.

PITTMAN, C.J., and ROBBINS, J., agree.