Pamela Sue CHAMPLIN and Mark Treat  *v.*
STATE of Arkansas

CA CR 06-770                                    254 S.W.3d 780

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

*Tim Blair*, for appellant Mark Treat.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

Brian S. Miller, Judge. Appellants, Pamela Sue Champlin and Mark Treat, were convicted after a joint-bench trial on December 13, 2005, in the Pulaski County Circuit Court. Champlin

was convicted of possession of a controlled substance, methamphet-amine, and possession of pseudoephedrine with intent to manufac-ture. Treat was convicted of possession of pseudoephedrine with intent to manufacture. Each was sentenced to five years' probation, thirty hours of community service, and was ordered to pay a $500 fine, fees, and court costs.

Appellants challenge the sufficiency of the evidence sup-porting their convictions. They argue that the trial court erred in finding probable cause for their arrests and for failing to suppress the State's evidence. Champlin also asserts that the State did not prove that she possessed a controlled substance. We affirm both appellants' convictions.

*Facts*

North Little Rock police officers Shana Cobbs and Ronnie Miller were conducting surveillance of pseudoephedrine sales on November 4, 2004, at the Target store on 4000 McCain Boule-vard. Officer Cobbs was posted in the store's camera room, and Officer Miller was in the store's parking lot. Officer Cobbs observed appellants exit a red truck, split up, and enter the store. She observed Champlin obtain two boxes of pseudoephedrine and later observed Treat get one box. Appellants paid for their pseu-doephedrine separately, left the store separately, and returned to their truck.

Officer Cobbs notified Officer Miller and met him in the parking lot. The officers followed appellants to a Wal-Mart store located a few miles away from Target. Upon arrival, Champlin exited the truck and went inside the store while Treat remained in the truck. Officer Miller followed Champlin, while Officer Cobbs observed Treat. Champlin purchased an additional box of pseu-doephedrine and left the store. The officers suspected that appel-lants were over the legal limit for possession of pseudoephedrine and arrested them.

Officer Miller searched the truck and found the boxes of pseudoephedrine purchased at Target, as well as two additional boxes. In the common areas of the truck, he found a purse, a bottle of peroxide, and a white sack containing approximately sixty loose pseudoephedrine pills. Officer Miller saw a flashlight in the purse and attempted to turn it on. When the flashlight would not turn on, Officer Miller opened it and found a small bag of metham-phetamine. Officer Miller then read appellants their rights.

Appellants then stated that they purchased the pseudoephedrine so that a friend could cook methamphetamine with it. They told Officer Miller that they normally traded pseudoephedrine for drugs. Champlin also stated that she did not know that she had left the bag of methamphetamine in the flashlight.

Champlin was charged with one count of possession of a controlled substance, methamphetamine, and one count of possession of pseudoephedrine with intent to manufacture. Treat was charged with one count of possession of pseudoephedrine with intent to manufacture. Each filed a motion to suppress their statements as well as the other evidence. The court held the suppression hearings and bench trial simultaneously.

Officer Cobbs testified that appellants were arrested for being over the legal limit for possession of pseudoephedrine. She stated that between the two of them, appellants purchased 9.6 grams of pseudoephedrine and that the legal limit was nine grams.

Officer Miller testified that appellants were detained because he believed they were over the legal limit for possession of pseudoephedrine. He said that the sixty pills found in the white sack in the truck had been popped out of their blister packs. The substance found inside the flashlight tested positive for methamphetamine. He stated that he read appellants their Miranda rights and that both appellants said they had purchased the pseudoephedrine so that a friend could cook methamphetamine with it. Both appellants told him that they normally traded pseudoephedrine for drugs. He also said that Champlin told him that she did not know that she had left the bag of methamphetamine in the flashlight.

Appellants moved to suppress Officer Miller's testimony. In support of their motions, they argued that there was no reason for their arrests because, individually, they were not over the legal limit for possession of pseudoephedrine. They argued that their arrests were unlawful because they were based on mere speculation. Appellants asserted that, at the time of their arrests, the officers admitted that appellants were being arrested because the officers suspected them of going from store to store to purchase pseudoephedrine for manufacture. The trial court denied the motions.

Appellants then moved to dismiss. They asserted that the State failed to prove that either of them possessed pseudoephedrine with the intent to manufacture methamphetamine. Champlin also argued that the State failed to show that she possessed metham-

phetamine because there was no evidence establishing either physical or constructive possession. The trial court also denied these motions.

Champlin then testified that she had sinus problems and that she and Treat stopped at Target to purchase a box of twenty-four-hour Sudafed. She said that she left Treat in the truck because he was not feeling well. Target was out of twenty-four-hour Sudafed, so she decided to purchase twelve-hour pseudoephedrine. She could not decide whether to purchase Sudafed or the generic, so she purchased one box of each. Champlin testified that she was unaware that Treat had purchased a box of pseudoephedrine until she returned to the truck.

Champlin testified that she and Treat left Target and drove to McDonald's. She was complaining that Target did not have twenty-four-hour Sudafed so Treat suggested that they stop at Wal-Mart. Appellants then drove to Wal-Mart and Treat remained in the truck while she went in and purchased a box of twenty-four-hour Sudafed. Champlin stated that her rights were never given to her, and she denied saying that she purchased the pseudoephedrine to provide to a friend to cook methamphetamine. She also denied telling the officers that she was aware of the methamphetamine in the purse.

Treat testified that he and Champlin were in his sister's truck and that he initially stayed in the truck when they went to Target. His head was congested, so he went into Target and purchased a box of pseudoephedrine. He and Champlin went to McDonald's and he suggested that they go to Wal-Mart to purchase twenty-four-hour Sudafed because Champlin was complaining that Target did not have any. Treat said that he remained in the truck while Champlin went inside Wal-Mart. He denied popping any of the pills out of their blister packs.

Treat testified that Officer Cobbs spoke with him while Officer Miller searched the truck. He said that Officer Cobbs began reading his rights to him but stopped. Treat denied telling the officers that he purchased the pseudoephedrine so that he could trade it for methamphetamine. He also denied saying that he purchased the pseudoephedrine so that someone else could cook methamphetamine.

Appellants renewed their motions to suppress at the close of the testimony and argued that the State failed to show that they were read their rights. The trial court again denied their motions

to suppress. The trial court found that there was sufficient evidence that appellants were read their rights and that they knowingly, intelligently, and voluntarily waived their rights. Champlin renewed her motion to dismiss and the court again denied her motion.

## Sufficiency of the Evidence

We view appellants' challenge to the sufficiency of the evidence in a light most favorable to the State, considering only the evidence supporting the verdict, and we will affirm if substantial evidence exists to support it. *DeShazer v. State*, 94 Ark. App. 363, 230 S.W.3d 285 (2006). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Smith v. State*, 367 Ark. 274, 239 S.W.3d 494 (2006).

When circumstantial evidence alone is relied upon, it must exclude every other reasonable hypothesis than that of the guilt of the accused, or it does not amount to substantial evidence. *Lowry v. State*, 364 Ark. 6, 216 S.W.3d 569 (2005). The jury decides whether the circumstantial evidence excludes every hypothesis consistent with innocence. *Wingfield v. State*, 363 Ark. 380, 214 S.W.3d 856 (2005).

### Champlin's Challenge

In support of Champlin's challenge to the sufficiency of the evidence supporting her conviction for possession of a controlled substance, she argues that the State failed to prove: (1) that she owned the truck in which the purse was found; (2) that she owned the flashlight in which the methamphetamine was found; or (3) that she had any knowledge of the existence of the purse, flashlight, or contraband. She points to Treat's testimony that the truck, in which the contraband was found, belonged to his sister.

The trier of fact is not required to believe the defendant's version of events because she is the person most interested in the outcome of the trial. *Turbyfill v. State*, 92 Ark. App. 145, 211 S.W.3d 557 (2005). Moreover, the State does not have to establish actual physical possession in order to prove possession of a controlled substance. *Newborn v. State*, 91 Ark. App. 318, 210 S.W.3d 153 (2005). It may prove constructive possession, which is the control or right to control the contraband. *Id.* When seeking to

prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. *Saul v. State*, 92 Ark. App. 49, 211 S.W.3d 1 (2005). This control can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.* Constructive possession may also be implied when the contraband is in the joint control of the accused and another. *Abshure v. State*, 79 Ark. App. 317, 87 S.W.3d 822 (2002).

Champlin was the driver of the truck in which the contraband was found and the purse containing the drugs was in plain view. Also in plain view was the bag containing the pseudoephedrine that was popped from the blister packs. Therefore, the trial court did not err in finding that Champlin constructively possessed the contraband. Even if the court believed the truck belonged to Treat's sister, there was other evidence establishing constructive possession. Indeed, Officer Miller testified that when he found methamphetamine in the flashlight, Champlin told him that she did not realize she left it there.

Officer Miller's testimony established that Champlin had knowledge of the methamphetamine in the flashlight and that the methamphetamine either belonged to her or that she exercised control over it. When the evidence is viewed in the light most favorable to the State, it is clear the State established that Champlin constructively possessed the methamphetamine. Therefore, there was substantial evidence supporting Champlin's conviction of possession of a controlled substance and we affirm.

Champlin also challenges the sufficiency of the evidence supporting her conviction for possession of pseudoephedrine with intent to manufacture. It is unlawful for any person to possess pseudoephedrine with the intent to manufacture methamphetamine, Ark. Code Ann. § 5-64-1102(a) (Repl. 2005), and Champlin argues that the State failed to prove that she intended to manufacture methamphetamine. A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004). Because intent cannot be proven by direct evidence, the trier of fact is allowed to draw upon his common knowledge and experience to infer it from the circumstances. *Id.*

Champlin argues that, at best, the State only established suspicious behavior. We disagree with this contention because we view the evidence in a light most favorable to the State and consider only the evidence supporting Champlin's conviction. Officer Miller's testimony is sufficient to support Champlin's conviction because he testified that Champlin admitted that the pills were purchased so that a friend could cook methamphetamine. He also testified that he found two additional boxes of pseudoephedrine in the truck along with a white sack containing approximately sixty pills that were removed from their blister packs.

Champlin asserts that the court should have believed her testimony that she purchased the pseudoephedrine for her sinus condition because this is a plausible explanation for the events in question. The fact finder, however, is not required to believe the testimony of any witness, especially that of the accused since she is the person most interested in the outcome of the case. See Wright v. State, 355 Ark. 395, 983 S.W.2d 397 (1998). For the reasons provided herein, the fact finder did not have to resort to speculation or conjecture to find that Champlin possessed pseudoephedrine with the intent to manufacture methamphetamine. Therefore, substantial evidence supported Champlin's convictions and we affirm.

Treat's Challenge

Treat's challenge to the sufficiency of the evidence supporting his conviction for possession of pseudoephedrine with intent to manufacture is not preserved for review. Rule 33.1(b) of the Arkansas Rules of Criminal Procedure provides that a motion to dismiss shall be made at the close of all the evidence. If the defendant moves for dismissal at the conclusion of the State's case, the motion must be renewed at the close of all the evidence. Treat failed to renew his motion at the close of the evidence and therefore this challenge is not preserved. See Flowers v. State, 362 Ark. 193, 208 S.W.3d 113 (2005).

### Probable Cause to Arrest

Appellants argue that no probable cause existed for their arrests and, therefore, they were arrested illegally. A law enforcement officer may arrest a person if the officer has reasonable cause to believe that person has violated the law in the officer's presence.

Ark. R. Crim. P. 4.1(a)(iii). Reasonable cause exists where facts and circumstances, within the arresting officer's knowledge and of which he has reasonably trustworthy information, are sufficient within themselves to warrant a man of reasonable caution to believe that an offense has been committed by the person to be arrested. *Thornton v. State*, 85 Ark. App. 31, 144 S.W.3d 766 (2004). We have held that there is no substantive distinction between the terms "reasonable cause" and "probable cause." *Id.*

The determination of probable cause rests on the collective information of the police officers. *State v. Bell*, 329 Ark. 422, 948 S.W.2d 557 (1997). In assessing the existence of reasonable or probable cause, our review is liberal and is guided by the rule that probable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction. *West v. State*, 82 Ark. App. 165, 120 S.W.3d 100 (2003). All presumptions are favorable to the trial court's ruling on the legality of the arrest, and the appellant bears the burden of demonstrating error. *Winston v. State*, 355 Ark. 11, 131 S.W.3d 333 (2003).

The officers testified that appellants were arrested because the officers suspected they were over the legal limit for possession of pseudoephedrine. Prior to the arrest, the officers observed appellants arrive at Target in the same truck, separate, and enter the store. Champlin was then observed purchasing two boxes of pseudoephedrine while Treat was separately observed purchasing a third box of pseudoephedrine. The officers saw appellants meet up at their truck and then drive to Wal-Mart, where Champlin was observed purchasing an additional box of pseudoephedrine.

Appellants argue that their behavior would not cause a reasonably cautious person to suspect that a crime was being committed. We disagree. Appellants split up to make three separate pseudoephedrine purchases, from two separate stores, within a relatively short time-span. Their behavior provided a basis for a reasonably cautious person to conclude that appellants were committing a crime. Therefore, probable cause existed for their arrests and we affirm.

*Motions to Suppress*

Appellants finally assert that the trial court erred when it denied their motions to suppress. Denials of motions to suppress are reviewed de novo based upon the totality of the circumstances. We review the factual findings for clear error and determine

whether the facts give rise to a reasonable suspicion or probable cause. Due weight is given to inferences drawn by the trial court. *DeShazo v. State*, 95 Ark. App. 398, 237 S.W.3d 493 (2006). We reverse only if the denial of a motion to suppress is clearly against the preponderance of the evidence. *See Davis v. State*, 367 Ark. 330, 240 S.W.3d 115 (2006).

■ Appellants argue that, due to their illegal arrests, the trial court erred when it denied their motions to suppress the evidence obtained as a result of their arrests. As set forth above, we hold that probable cause existed for appellants' arrests. We therefore affirm the trial court on this issue.

Appellants also argue that the trial court erred in failing to suppress their custodial statements. A statement made while an accused is in custody is presumptively involuntary, and the burden is on the State to prove, by a preponderance of the evidence, that the statement was given voluntarily and was knowingly and intelligently made. *Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002). A suspect's spontaneous statement, however, although made in police custody, is admissible against the suspect. *Winston, supra.* On review, we focus on whether the statement was made in the context of a police interrogation, meaning direct or indirect questioning put to appellant by the police with the purpose of eliciting a statement from him or her. *Id.*

Appellants testified that they were not advised of their rights when they were arrested and both denied making statements. Officer Miller, however, testified that he read the Miranda rights to both appellants and that they then volunteered that they purchased the pseudoephedrine to provide to a friend in order to cook methamphetamine.

■ Appellants argue that the State failed to overcome the presumption that their statements were involuntary because the testimony is conflicting. The trial judge, however, is charged with determining the credibility of witnesses who testify at a suppression hearing and we defer to his superior position in matters of credibility. *Wilson v. State*, 95 Ark. App. 384, 237 S.W.3d 473 (2006). The trial court apparently believed Officer Miller's version of the events. Giving deference to the trial court's resolution of the conflicting testimony, we affirm.

Affirmed.

PITTMAN, C.J., GLOVER, and VAUGHT, JJ., agree.

ROBBINS and GRIFFEN, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. I agree with the majority that there was substantial evidence to support Champlin's convictions, and that Treat's challenge to the sufficiency of the evidence is not preserved for review. I also agree that, had there been probable cause for the police to make the arrests, the appellants' subsequent custodial statements would have been admissible based on Officer Miller's testimony that he Mirandized appellants and they both gave voluntary statements. However, I would reverse and remand on the ground that appellants were illegally arrested, and thus that the trial court erred in denying appellants' motion to suppress evidence.

The police officers' stated reason for arresting appellants was for overpossession of pseudoephedrine. Arkansas Code Annotated section 5-64-1101(a) (Repl. 2005) provides that it is unlawful for any person to possess more than nine grams of pseudoephedrine. In the present case, the police had information that Champlin possessed a legal quantity of pseudoephedrine, and that Treat possessed a legal quantity of pseudoephedrine, with the aggregate weight being 9.6 grams. Neither Champlin nor Treat was charged with overpossession of pseudoephedrine, and there was a lack of any probable cause that either of them had committed that offense. While the State argues that appellants were accomplices and jointly possessed an amount of pseudoephedrine that was over the legal limit, I cannot agree with that analysis. Under the facts known to the police, neither appellant could be imputed with joint possession of what was purchased by the other.

The majority asserts that the appellants' conduct of splitting up and making three separate purchases within a relatively short time frame gave the police probable cause that they were committing a crime. In my view, this activity gave the police only a reasonable suspicion that the appellants were committing the crime of possession of pseudoephedrine with intent to manufacture methamphetamine. Rule 3.1 of the Arkansas Rules of Criminal Procedure permits an officer to stop and detain a person for further investigation if he reasonably suspects that the person has committed a felony. Pursuant to this rule the police were authorized in this case to stop appellants to verify their identification and to determine the lawfulness of their conduct. However, I cannot agree that these circumstances, for which there might have been a

reasonable and innocent explanation, rose to the level of the probable cause necessary under Rule 4.1(a) to make a warrantless arrest.

The "fruit of the poisonous tree" doctrine provides that evidence obtained by the exploitation of a primary illegality must be excluded. *See Wong Sun v. United States*, 371 U.S. 471 (1963). I would hold that the inculpatory evidence obtained as a result of the appellants' unlawful arrest should have been excluded. Therefore, I respectfully dissent.

GRIFFEN, J., joins in this dissent.