Cite as 2021 Ark. App. 484

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-20-707

| | |
|---|---|
| YAFAI INVESTMENTS, INC.; AND MAHDI HS SALEH<br><br>APPELLANTS<br><br>V.<br><br>ARKMO FOODS, LLC<br>APPELLEE | **Opinion Delivered** December 8, 2021<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT<br>[NO. 01SCV-18-220]<br><br>HONORABLE KATHLEEN BELL, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Appellants, Yafai Investments, Inc., and Mahdi HS Saleh (collectively, "Yafai"), appeal from the Arkansas County Circuit Court's denial of their motion to enforce a settlement and forbearance agreement and to cancel a deed. Yafai argues that the circuit court erred in concluding that appellee Arkmo Foods, LLC, did not hinder or prevent Yafai's performance of the agreement and that the circuit court further abused its discretion by relying on a letter from Yafai's bank because it was inadmissible hearsay. We affirm.

I. *Factual Background*

In August 2016, Yafai signed a promissory note, secured by a mortgage on property in Stuttgart, to repay Arkmo $167,500. When Yafai failed to make the payments that were due the first of every month, Arkmo filed a complaint for foreclosure on November 16,

2018. Trial was scheduled for November 5, 2019. On November 4, the parties executed a settlement and forbearance agreement, which provides, in part, the following:

1. **Payments.** Within ten (10) business days of the "execution" of this Agreement (as defined below), [Yafai] shall pay to [Arkmo] the sum of $29,077.10 U.S.D. ($3,000.00 of which is intended to reimburse attorney's fees incurred by [Arkmo]). [Yafai] will continue thereafter beginning in November 2019 to pay to [Arkmo] the sum of $1,862.65 U.S.D. The date of the "execution" of this Agreement is the date on which the last and final signature is placed on this Agreement or a counterpart.

2. **Forbearance.** So long as [Yafai] make[s] the payments required in paragraph 1 of this Agreement timely and in full, [Arkmo] shall forbear any collection action in the Lawsuit or otherwise for nine (9) months from the execution of this Agreement (the "Forbearance Period"). If [Yafai] fail[s] to make in full or on time any payment required in paragraph 1 of this Agreement during the Forbearance Period, [Yafai] will be in default. If [Yafai] fail[s] to cure the default within ten (10) business days after receiving a written notice of default from [Arkmo], [Arkmo]'s forbearance obligation shall cease.

Yafai also agreed to prepare and deliver to Arkmo's counsel a signed warranty deed for the property in Stuttgart that Arkmo agreed to hold in escrow so long as Yafai made timely payments in full.

On November 21, Arkmo's counsel sent a courier to collect payment and retrieve a warranty deed that Arkmo's counsel had prepared. Yafai's counsel gave the courier two checks drawn on Yafai's account at Bank of England: a business check (number 1089) for $15,000 postdated November 22, 2019, and a business check (number 1092) for $14,077.10 postdated November 29, 2019. The warranty deed was signed on November 20, 2019.

Counsel for Yafai and Arkmo exchanged emails on November 25. Arkmo's counsel alerted Yafai's counsel that there were insufficient funds to cover either check from Yafai. Yafai's counsel pointed out that the checks had been postdated and that the courier had been informed that the checks would bounce if cashed too soon. Arkmo's counsel

responded that Arkmo had not agreed to accept postdated checks and that he had called the bank that day to check on the status of the funds.

Arkmo's counsel also sent a letter dated November 25 to Yafai's counsel stating that

[w]e have been informed that the checks are no good and the account has insufficient funds. I must admit I am very frustrated that Mr. Yafai did not provide readily available funds for the total amount we agreed upon and he did not provide payment for November (which is now past due).

Arkmo's counsel made the following demand:

Unless your client provides my office with a cashier's check for the total amount we agreed upon ($29,077.10) plus the November payment (and late fee) within ten (10) business days, we will file the warranty deed and ask the trial court assistant to set this matter for trial as soon as possible to recover our deficiency and seek immediate recovery of the property.

Yafai sent to Arkmo via Federal Express a cashier's check dated December 9 for $29,077.10 along with a business check (number 1085) for $1,862.65. On the memo line of the business check is written "Nov. payment." On December 13, Arkmo's counsel sent Yafai's counsel an email stating that he had contacted Bank of England regarding the checks. He referred to an attachment and said that, while he was depositing the cashier's check, "[a]s of today, [Yafai] has not provided November or December's payments" and that he had no option but to set the matter for trial. Attached to the email was a letter from a branch manager at Bank of England informing Arkmo that on December 12 at 10:20 a.m. there were not sufficient funds in Yafai's account to cover check number 1085. On December 16, Yafai's counsel sent an email to Arkmo's counsel advising that Yafai would send cashier's checks going forward, "including the one where you called the bank."

3

Arkmo received no further payments. On January 21, 2020, Arkmo recorded the warranty deed for the property in Stuttgart. Yafai filed a motion to enforce the settlement and forbearance agreement and to cancel the deed. A hearing was held in March 2020.

Mohammad Yafai, president and part owner of Yafai Investments, Inc., testified that Yafai had endeavored to cure its default referenced in the November 25 notice with a cashier's check and a business check. Mr. Yafai said that, if Arkmo had presented check number 1085 to the bank, Yafai would have made sure that there were sufficient funds in the account. Mr. Yafai further testified that he had the funds in court that day for the December 2019 and the January through March 2020 payments. On cross-examination, Mr. Yafai admitted that Yafai had submitted bad checks to Arkmo in the past. Mr. Yafai insisted, however, that check number 1085 would have cleared had it been presented because Yafai had overdraft protection. Mr. Yafai conceded that the November payment had not been debited from Yafai's account, and he admitted that Yafai had made no other payments to Arkmo.

Bob Mosesso, a member of Arkmo, testified that Yafai had a history of writing bad checks to Arkmo and that it was not uncommon for Arkmo to contact Yafai's bank before depositing checks from Yafai. He said that Arkmo had received neither the November payment nor the December payment from Yafai. Mr. Mosesso agreed that Arkmo had not attempted to deposit Yafai's check number 1085 for the November payment but stated that Arkmo had been informed by the bank that there were insufficient funds in Yafai's account. He said that, because no further payments were received, he instructed Arkmo's counsel on January 21, 2020, to record the deed—more than thirty calendar days after notice of default.

4

In denying Yafai's motion to enforce the agreement, the circuit court found that Yafai had defaulted with respect to the postdated checks (numbers 1089 and 1092); that Yafai had received notice of the default on November 25; and that Yafai had failed to cure the default with check number 1085. The circuit court noted Yafai's history of untimely payments and found that Arkmo had properly relied on the bank's letter regarding insufficient funds in Yafai's account. The circuit court also found that Arkmo had notified Yafai of the insufficient funds with respect to check number 1085 but that Yafai had taken no further action to cure the default. The circuit court further found that Yafai had failed to make payments in November and December 2019 as well as in January through March 2020. In denying Yafai's request to set aside the deed, the circuit court noted that Arkmo had waited until January 21, 2020, to record the deed. The circuit court ruled that Arkmo had "acted appropriately" in filing the deed and had not breached the agreement.[1] Yafai filed a timely notice of appeal.

## II. *Discussion*

### A. Failure to Cure Default

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Gifford v. McGee*, 2019 Ark. App. 183, 574 S.W.3d 218. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Id*. Facts in dispute and determinations

---

[1]The circuit court attached an Arkansas Rule of Civil Procedure 54(b) certificate to its order.

5

of credibility are solely within the province of the finder of fact. *Id*. For questions of law, our review is de novo. *Barnes v. Wagoner*, 2019 Ark. App. 174, 573 S.W.3d 594.

Yafai notes that, in addition to the express terms of a contract, the law implies a promise that the parties will act in good faith and deal fairly with each other in performing and enforcing their obligations under a contract. In other words, the parties must not do anything to prevent, hinder, or delay the performance of a contract. Yafai relies on *Cantrell-Waind & Associates, Inc. v. Guillaume Motorsports, Inc.*, 62 Ark. App. 66, 968 S.W.2d 72 (1998), for the proposition that Arkmo hindered and prevented Yafai from curing its default by not presenting check number 1085 to the bank.

Yafai's reliance on *Cantrell-Waind* is misplaced. In that case, this court reversed the circuit court's award of summary judgment to the lessor of property against its realtor after the lessees had exercised their option to purchase. This court held that there was a factual question as to whether the lessor had hindered or prevented the performance of a condition of a real estate contract by delaying the closing to avoid paying the realtor a commission. In *Cantrell-Waind*, there was evidence of fraud in that the lessor had approached the lessees/buyers about giving them half of the realtor's commission if they agreed to delay the closing beyond August 1, and the lessor falsely claimed to be out of the country before August 1. Here, there was no fraud alleged, and this case was decided after a full trial on the merits in which the circuit court concluded that Arkmo had "properly relied" on the bank's information that there were insufficient funds in Yafai's account.

Yafai also argues that there was undisputed evidence that, had Arkmo presented check number 1085, Yafai "would have made sure that there were sufficient funds in the

bank account" and that, because Yafai had overdraft protection, the check would have been honored. Yafai maintains that Arkmo then used that failure to cure, which Arkmo itself had caused, to record the deed, which stripped Yafai of its ownership interest and equity in the property and made it impossible for Yafai to refinance the loan. Yafai further argues that, other than the November 25 notice of default, Arkmo did not send any "formal" notices that would have provided Yafai with an opportunity to cure subsequent defaults. According to Yafai, given this failure to provide notice, the subsequent defaults cannot provide a basis for Arkmo's having recorded the deed. Yafai points out that he tendered the payments for those defaults (December 2019 through March 2020 payments) in open court.[2]

Yafai does not appear to dispute, at least on appeal, that it defaulted with respect to the two checks (numbers 1089 and 1092) that were postdated. The circuit court found that Yafai failed to cure that default when it presented check number 1085 because there was reason to believe that there were insufficient funds in Yafai's account. The circuit court referenced the parties' history with each other—Yafai frequently offered checks for which it had insufficient funds, and Arkmo was in the habit of calling Yafai's bank to inquire about each check before presenting it. The circuit court was not required to believe the assertion that Yafai had overdraft protection and that the check would have been honored had Arkmo presented it to the bank. The circuit court, however, did not stop with this initial default and failure to cure but rather went on to find subsequent defaults. Yafai received notice that

_____

[2]Yafai also argues that Arkmo's acceptance of the cashier's check, representing ninety-four percent of the amount due, constituted a waiver of the untimeliness of the payment and asserts that the agreement does not provide that time is of the essence with respect to monthly payments. We will not consider an argument raised for the first time in a reply brief. *Sanders v. Passmore*, 2016 Ark. App. 370, 499 S.W.3d 237.

there were insufficient funds in Yafai's account to cover check number 1085, yet Yafai took no action and made no further payments. The record reflects that Arkmo informed Yafai in the same notice regarding insufficient funds that neither the November nor the December payment had been received. Yafai's only argument in this regard is that it had received no "formal" notice with respect to any subsequent defaults.

The agreement expressly provides that "[a]ny notice or notices required by the Agreement shall be sent by (1) certified U.S. mail, (2) delivery by private delivery service, (3) electronically by email or similar means, or (4) any combination thereof." In the email dated December 13, Arkmo's counsel informed Yafai's counsel that Yafai had provided neither the November nor the December payments. Despite a promise from Yafai's counsel that cashier's checks would be provided going forward, Yafai provided no further payments. There is no dispute that Yafai did not make the December payment. Mr. Yafai expressly testified to this. Arkmo did not record the warranty deed until January 21, 2020, which was well beyond the ten-day period within which Yafai could have cured this default.

We are not left with a firm conviction that the circuit court made a mistake in denying Yafai's motion to enforce the agreement. Yafai received notice with the December 13 email—an acceptable means of notification per the agreement—that it had failed to make the December payment. By extension, the circuit court did not err in concluding that Arkmo had "acted appropriately," or in good faith, and was entitled to file the warranty deed given Yafai's failure to cure this subsequent default.

B. Admission of Bank's Letter

The decision to admit or refuse evidence is within the circuit court's discretion, and this court will not reverse the circuit court's ruling absent an abuse of discretion and a showing of prejudice. *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). An out-of-court statement is not hearsay if it is offered to show a course of conduct or basis of action. *West v. State*, 82 Ark. App. 165, 120 S.W.3d 100 (2003).

Yafai argues that the letter from the bank stating that Yafai's account had insufficient funds to cover check number 1085 was hearsay. Yafai asserts that the letter was indeed admitted for the truth of the matter asserted and relied on by the circuit court. According to Yafai, the bank's letter was the only evidence that showed that the check would have possibly been returned for insufficient funds.

The circuit court expressly stated that it did not consider the bank's letter for the truth of the matter asserted. The rules of evidence do not apply with the same strictness in a nonjury case in which the court has training in evaluating the evidence. *Butler v. Dowdy*, 304 Ark. 481, 803 S.W.2d 584 (1991). Even if the circuit court erred in admitting the letter, we would not reverse given our conclusion that Yafai defaulted with respect to the December payment. The bank's letter pertained only to check number 1085 representing the November payment. In other words, the circuit court did not rely on the bank's letter to support what amounted to an independent basis for its decision, i.e., that Yafai failed to

9

cure its default by not making the December payment, of which the record confirms that Yafai received written notification in the form of an email.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Niswanger Law Firm PLC*, by: *Stephen B. Niswanger*, for appellants.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellee.